## DeVivio v. Peiffer

*William H. Kaye*, for plaintiff.
*Henry O. Heiser, III*, for defendant.

SPICER, *P.J.*, November, 8, 1982—On June 16, 1981, the parties, who were then husband and wife, executed a separation agreement that provided inter alia:

*Alimony*

6. Husband shall pay to Wife as alimony the sum of One Thousand Five Hundred Dollars ($1,500) per month beginning September 1, 1981, and continuing each month thereafter for a period of two (2) years or a total of twenty-four (24) months, after which he shall pay to Wife the sum of Seven Hundred Fifty Dollars ($750) per month for an additional period of one (1) year or twelve (12) months. Thereafter, Husband shall have no obligation to pay Wife any alimony whatsoever. The obligations of Husband as set forth herein shall be binding upon him, his heirs, and personal representatives of his estate. If Husband should die before the entire amount of Forty-five Thousand Dollars ($45,000) has been paid in full, the unpaid balance of each sum shall be paid to Wife by his estate.

The contract also provided that it be interpreted under Pennsylvania law.

Plaintiff claims that defendant breached the agreement by failing to make payments due in June of 1982 and thereafter. Defendant filed an answer alleging that the June payment had been made but admitted making none thereafter. He claims he was absolved of the duty to make payments because plaintiff entered into a meretricious relationship and subsequently remarried. He alleges "[i]n the further alternative" that plaintiff had agreed to waive payments after marriage for consideration passing after the date of the agreement.

Defendant also counterclaims for money paid after plaintiff's remarriage.

The court will try discussing preliminary objections filed by plaintiff in a logical manner.

## 1. Motion to Strike

Plaintiff contends that allegations concerning her relationships and remarriage are irrelevant under the terms of the agreement. She submits that provisions in the agreement place an unconditional contractual duty upon defendant. She cites the Superior Court decision in Litwack v. Litwack, 289 Pa. Superior Ct. 405, 433 A. 2d 514 (1981) to substantiate her position.

Defendant rejoins that the provision calling for interpretation under Pennsylvania law incorporates the definition of alimony of The Divorce Code. He contends that "alimony" is a latently vague term and that the fundamental or underlying assumption of the parties was that the term had the same meaning as provided in The Divorce Code. He quotes 3 Corbin on Contracts §590: "Evidence of facts tending to show that such a fundamental assumption was made, though not expressed in the writing, should never be excluded by any 'parol evidence rule'." He attempts to distinguish Litwack, supra, and to remove its impact by noting it dealt with a written agreement dated long before the enactment of The Divorce Code.

Although the court feels defense counsel has presented a very intellectually and logically arranged argument, it lacks merit. The provision concerning Pennsylania law simply means that Pennsylvania rules of interpretation will be applied, not that meanings of a particular statute are grafted onto the agreement. Furthermore, the definition of "alimony"

in The Divorce Code is "an order for support." 23 P.S. §104. In this case, we deal not with an order but with an agreement.

One rule of construction applied in Litwack, supra, is that where the writing is clear and unambiguous the intent of the parties must be ascertained from the express language of the agreement. Related rules are that (1) the court can never add terms and conditions to an unambiguous contract and (2) the court cannot alter the terms or give terms a construciton in conflict with the accepted and plain meaning of the terms used.

The provision concerning alimony is clear.

It is true that Litwack dealt with the word *support* and not *alimony*. The Superior Court held that an ex-wife's right to support did not cease upon cohabitation because the contract did not provide that it would cease.

We do not find the distinction between support and alimony to be important to the decision in this case, since rules of termination are common to both. A spouse may be entitled to have an order of support terminated upon proof that the other spouse is involved in a marital type relationship: Com. ex rel. D'Andrea v. D'Andrea, 262 Pa. Superior Ct. 302, 396 A. 2d 765 (1978). The situation in Litwack certainly would have been grounds for termination of a support order.

The Superior Court held that a relationship was irrelevant to a contractually imposed duty in Litwack and we hold the same in this case.

The motion to strike is granted.

## 2. More Specific Pleading

The answer alleges a new agreement in very vague and conclusionary terms. Normally, this court would

dismiss the motion for more specific pleading. Plaintiff should be in as good a position as defendant to know whether or not such an agreement was made and she could always rely upon discovery to fill in gaps.

However, the allegation is curiously worded and might indicate that defendant is simply throwing in a defense without real factual basis.

The court will, on balance, sustain the motion and require defendant to be more specific.

### 3. Demurrer

As the answer and counterclaim now read, defendant has stated a cause of action relating to payments made after the remarriage. He has alleged he made the June 1982 payment and that plaintiff remarried June 25, 1982. Therefore, he has a facially viable claim for six days' worth of payments.

Of course, this course of action will stand only if defendant successfully alleges and proves a new agreement. For the time being, however, the demurrer must be overruled.

### ORDER

And now, November 8, 1982, plaintiff's motion to strike and motion for a more specific pleading are granted. Her demurrer is overruled.

Plaintiff need not reply to defendant's new matter and counterclaim until defendant files an amendment. He shall have 20 days in which to do so.